UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| Eugene Boisvert, | : | |
| Plaintif, | : | |
| | : | |
| v. | : | CASE NO. 3:13-cv-1878 (VLB) |
| | : | |
| United States of America, | : | January 24, 2018 |
| Defendant. | : | |

## MEMORANDUM OF DECISION DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

I.  **Background**

Before the Court is a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct sentence filed by Eugene Boisvert ("Petitioner"). [Dkt. No. 1.] Petitioner contends that his trial counsel was ineffective in failing to (1) conduct a proper investigation; (2) retain and offer testimony at trial of a forensic expert; (3) adequately cross examine Government witnesses with regard to his online chats; (4) object to the admission of certain evidence; and (5) move to suppress petitioner's post-*Miranda* statements. On January 8, 2018, the Court conducted an evidentiary hearing at which Petitioner was represented by appointed counsel. At the onset of the hearing, Petitioner and his counsel requested a recess for the purpose of discussing Petitioner's contentions, after which Petitioner withdrew all claims except the claim that his counsel was ineffective for failing to file a motion to suppress. In so doing, Petitioner admitted that his trial counsel did retain a forensic expert whose opinion corroborated the government's evidence establishing that Petitioner was online at the time of the chats which formed the basis of the charge. As a result,

Petitioner's counsel was effective in choosing not to call the expert as a witness at trial as his testimony would have been incriminating. Petitioner also admitted that his trial counsel properly stipulated to the admission of the records of regularly conducted activity, as they were admissible under the Federal Rules of Evidence. Finally, Petitioner admitted that his trial counsel adequately cross-examined the government's witnesses. Thus the sole remaining issue before the Court is whether Petitioner's trial counsel was ineffective in failing to file a motion to suppress Petitioner's post-*Miranda* statements. For the reasons stated below, the Court finds that Petitioner's trial counsel was not ineffective in so failing and DENIES the writ.

II. Facts

A Federal Bureau of Intelligence (FBI) agent impersonated a teenaged girl and engaged in numerous prurient conversations with a male individual identifying himself as an adult. The conversations took place in a chat room and were electronically recorded. The pair agreed to meet to engage in intimate sexual conduct at a beach in Milford, Connecticut, where the girl purportedly lived. The pair also agreed that the adult male would wear a certain article of clothing when they met so the child could identify him. On the day of the scheduled meeting, FBI agents and other law enforcement officers followed the Plaintiff from his home in Massachusetts to a street in Milford, Connecticut on the route to the beach. Around the corner from the beach, the agents blocked Plaintiff's vehicle from fleeing the scene, exited their vehicles with drawn firearms, and apprehended Petitioner. At the scene, law enforcement discovered

that Petitioner was in possession of the article of clothing which the individual engaged in the chat stated he would be wearing. The Petitioner was arrested and taken to the FBI office, where he was advised of his *Miranda* rights both orally and in writing. Petitioner was directed to initial each individual advisement in the written *Miranda* advisement and to sign the document, which Petitioner did. [Hearing Exhibit 1.] Two FBI agents then interrogated Petitioner, during which they showed him transcripts of chats. They asked him if the transcripts were of his chats and, if so, to initial each. He initialed them indicating that he recognized them as transcripts of his chat conversations. Plaintiff was indicted, prosecuted for, and convicted of Use of Interstate Facilities to Persuade a Minor to Engage in Sexual Activity in violation of 18 U.S.C. S 2422(b) and Interstate Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. §2423(b).

Petitioner established his indigence and was appointed counsel to represent him. Over the course of his prosecution, he was represented by three attorneys, each of whom advised him to accept a plea offer. The first two attorneys withdrew because the attorney-client relationship broke down when counsel advised Petitioner that, in light of the government's evidence, it was in Petitioner's best interest to accept a plea offer. Prior to trial, the government delayed seeking an indictment so that Petitioner would have an opportunity to plead to a charge which did not carry a mandatory minimum 10-year sentence. Petitioner chose not to plead guilty because he insisted he did not intend to engage in illicit sexual conduct. Petitioner preferred to go to trial and explain that he was only chatting with the child to scare her so that she would no longer visit

3

chat rooms, and that he arranged to meet her solely for the purpose of learning where she lived so that he could tell her family what she was doing. In none of the chats offered at trial did Petitioner ask the child for her address, home telephone number, or her parents' identities. Throughout the prosecution Plaintiff admitted to his attorney, as he admitted to the FBI, that he did engage in the chats with the individual who identified herself as a female child. At trial, Petitioner admitted that he engaged in the chats and arranged to meet the child and testified, to the obvious incredulity of the jury, that he did so for her protection.

In preparation for trial, Petitioner's third attorney engaged a forensic expert. The expert's opinion corroborated the government's theory of the case and accordingly Petitioner's attorney chose not to call the expert as a witness at trial. At trial, the government admitted into evidence numerous chats which were initialed by Petitioner as well as the testimony of law enforcement officers involved in the investigation, including the agent who impersonated the female child. Petitioner was ultimately convicted.

Following Petitioner's conviction, he filed an appeal challenging his conviction and sentence, which included an enhancement for his patently dishonest testimony. Both were affirmed. Thereafter, Petitioner filed a writ of habeas corpus contending that documents he filed with his writ conclusively proved that he was not online at the time his crimes of conviction were committed. A review of the documents submitted did not establish what Petitioner claimed, and the Court scheduled a hearing to confirm that Petitioner's

4

papers meant what they said and to ensure that the Court did not misconstrue his position. Upon Petitioner's confirmation that the Court understood his argument, the petition was denied and Petitioner appealed. On appeal, the matter was remanded because the Court failed to appoint an attorney to represent the Petitioner at the hearing. This Court appointed counsel to represent Petitioner and the subject evidentiary hearing was conducted on January 8, 2018.

As intimated above, Petitioner abandoned his claim that the exhibits filed in support of his original writ proved that he was not online at the time of the subject chats, establishing his innocence. Instead he asserted five new claims, and then with the assistance of his fourth attorney withdrew all but one of these new claims. The sole remaining claim is that counsel was ineffective in failing to move to suppress his initials and signature on the *Miranda* advisement and the transcribed chats. For purposes of this decision and in the interest of finality, the Court addresses this claim here without addressing the issue of procedural default.

Specifically, Petitioner claims that the totality of the circumstances surrounding his apprehension and interrogation were coercive and that his signature and initials were not made voluntarily. For the reasons stated below, the Court finds Petitioner's counsel was not ineffective in failing to file a motion to suppress Mr. Boisvert's custodial statements.

### III. Legal Standard

To establish ineffective assistance of counsel, a habeas petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard

5

of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (quoting *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005)) (applying the ineffective assistance of counsel inquiry set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)). To satisfy the "performance" prong, there must be a demonstration that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). Counsel's omissions fall outside this range of reasonableness if they "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003). To satisfy the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Mazzuca*, 570 F.3d at 502. In assessing prejudice stemming from the failure to investigate and introduce (or exclude) certain evidence, a court must consider "all the relevant evidence that the jury would have had before it" had the evidence been introduced, including unfavorable evidence. *Wong v. Belmontes*, 130 S. Ct. 383, 386 (2009) (per curiam).

A petitioner challenging his conviction on the basis of ineffective assistance of counsel bears a heavy burden, as "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably

6

professional assistance." *Strickland,* 466 U.S. at 689 (1984).  A defendant's *post hoc* accusations alone are not sufficient to overcome this strong presumption, because a contrary holding would lead to constant litigation by dissatisfied criminal defendants and harm the effectiveness, and potentially even the availability, of defense counsel.  *Id.*  In adjudicating a claim of ineffective assistance of counsel, the "ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."  *Strickland*, 466 U.S. at 696.

Because the Petitioner here alleges his trial counsel was ineffective for declining to move to suppress his signed chat transcripts, the Court must consider the law governing suppression to determine whether trial counsel's decision amounted to ineffective assistance.  The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  An accused may not be compelled against his will to incriminate himself. See *Miranda v. Arizona*, 384 U.S. 436, 460 (1966).  "[T]he very fact of custodial interrogation exacts a heavy toll on individual liberty." *Id*. at 45.  This is because interrogations are inherently intimidating, stress-provoking and coercive.  Law enforcement officials may not question a suspect unless the suspect voluntarily waives her constitutional right to remain silent.  *Malloy v. Hogan*, 378 U.S. 1, 8 (1964).  Only a confession which is "truly . . . the product of

his free choice" is voluntary. *Miranda*, supra at 458. A statement is not voluntary when it is the product of coercion. *Lynumn v. Illinois*, 372 U.S. 528 (1963). An involuntary statement must be suppressed. *Id.*

In order to be voluntary, a responsive statement made to law enforcement by a person in custody must be preceded by a "*Miranda* Warning." *Miranda v. Arizona*, 384 U.S. 436 (1960). A precise recitation of the language of the *Miranda* decision is not required, so long as the warnings given adequately convey the substance of these rights to the defendant. See *California v. Prysock*, 453 U.S. 355, 359–61 (1981). There is no definite rule on when a waiver is immune from challenge. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Even where a *Miranda* warning is given, a statement may be suppressed if it was not knowingly, intelligently, and voluntarily made in light of the totality of the circumstances. *United States v. Bye*, 919 F.2d 6, 9 (2d Cir. 1990); *Green v. Scully*, 850 F.2d 894, 901–02 (1988). This inquiry centers around "(1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Green*, 850 F.2d at 901-02. Under the totality of the circumstances test, relevant factors include "the accused's age, his lack of education or low intelligence, the length of detention, the nature of the interrogation, and any use of physical punishment. *Campaneria v. Reid,* 891 F.2d 1014, 1020 (2d Cir. 1989); *see United States v. Guarno*, 819 F.2d 28, 30 (2d Cir. 1987). Evidence that a *Miranda* waiver was the product of police coercion may render the waiver invalid and the detainee's statements involuntary. *Colorado v.*

*Connelly*, 479 U.S. 157, 168–69 (1986) (holding that a detainee's schizophrenia did not necessarily render his post-*Miranda* statement inadmissible).

The Second Circuit provided guidance on the factors to be considered in applying the totality of the circumstances test. *Green*, 850 F2d at 901-02. In considering the detainee's characteristics, the court should reflect on the detainee's experience, background and intelligence. *Id*. However, intelligence alone is not indicative of voluntariness; a "diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." *United States v. Salameh,* 152 F.3d 88, 117 (2d Cir. 1998) (quoting *United States v. Chrismon,* 965 F.2d 1465, 1469 (7th Cir. 1992)), *cert. denied,* 525 U.S. 1112 (1999). For example, where a detainee appeared for a short period of time to be under the influence of a hallucinogen, but the detainee's affect was generally cautious and constricted during his police interview, the court found the statements made were voluntary. *United States v. Parker*, 116 F. Supp. 3d 159, 174 (W.D.N.Y. 2015).

Second, the court should consider the conditions under which the detainee was interrogated, including the place and length of the interrogation and whether counsel was present. *Green*, 850 F.2d at 902. Conditions of confinement are relevant to voluntariness because of the "potentiality for compulsion that exists when an individual is cut off from the outside world and subjected to incommunicado interrogation in a police-dominated atmosphere." *United States v. FNU LNU*, 653 F.3d 144, 154 (2d Cir. 2011) (granting motion to suppress where no *Miranda* warning was given and the interrogation occurred in a closed room,

out of public view, with armed guards, and lasted 90 minutes). In such an environment there are "inherent coercive pressures that tend to undermine the individual's will to resist and to compel him to speak." *Id*.

Finally, and most critically, the court should take into consideration the conduct of the law enforcement officers, including whether a *Miranda* warning was given, whether the interrogation was prolonged or repetitious, and whether the detainee was subjected to physical abuse or other mistreatment, held in restraints or in some other uncomfortable condition, deprived of water, food, sleep, or clothing, or subjected to psychological brainwashing, including promises of leniency or other benefits. *Green*, 850 F.2d at 902. The conduct of law enforcement officers was also inappropriate if they made false and/or misleading statements in order to elicit a detainee's statement. *Compare United States v. Anderson*, 929 F.2d 96, 100 (2d Cir. 1991) (finding an officer improperly "threatened, tricked, or cajoled" the detainee into waiving his *Miranda* rights where the officer told the detainee three times to choose between having an attorney present during questioning or cooperating with the government, suggesting that if the detainee did not waive his rights he would forfeit forever his opportunity to speak with government officials); *with United States v. Lynch*, 92 F.3d 62 (2d Cir. 1996) (finding no affirmative misrepresentation where a detainee asked questions about his case while being searched and fingerprinted upon entry into the ATF office, and in response an officer advised the detainee of his *Miranda* rights and stated if the detainee "wished to continue making statements

about his case and to have his questions about his case answered by the agents, he would have to sign the waiver form").

The Second Circuit instructs that the totality of the circumstances analysis is not a balancing test and that even a single factor may lead to a conclusion that a detainee's will was overborn and the confession and not voluntary. *Green*, 850 F2d at 901-02; *see, e.g., Brown v. Mississippi*, 297 U.S. 278 (1936) (physical mistreatment constituted coercion); *Townsend v. Sain*, 372 U.S. 293 (1963) (administration of a "truth serum" constituted coercion); *Brooks v. Florida*, 389 U.S. 413 (1967) (depriving the defendant of food and holding him in a "sweat box" constituted coercion) *Rogers v. Richmond*, 365 U.S. 534 (1961) (threatening to take the defendant's ailing wife into custody constituted coercion); *Lynumn v. Illinois*, 372 U.S. 528 (1963) (threatening to deprive the defendant of her welfare benefits and custody of her children constituted coercion).

This Court finds instructive the manner in which the Second Circuit has applied the totality of the circumstances test in the past. In *Green,* the Second Circuit found that an unrepresented *Mirandized* detainee who was of above-average intelligence, had a tenth grade education, had prior experience with the criminal justice system, and was "street-wise" gave a knowing, intelligent, and voluntary waiver. 850 F.2d at 902. The detainee's will was not overcome by a 2-hour interrogation in the police station where police overstated the evidence they had against him, used scare tactics, promised to convey his cooperation to the prosecutor if he cooperated, and made other false statements, but did not mistreat him, allowed him to relieve himself, and supplied him with refreshments

and cigarettes. *Id.* The Second Circuit found persuasive the detainee's statement that he confessed because of his fear that he would hurt someone else, even his own mother, and not because he was coerced. *Id.*

The Second Circuit also employed the totality of the circumstances test to find a detainee's statements voluntary in *Parsad v. Greiner*, 337 F.3d 175 (2d Cir. 2003). In *Parsad*, the detainee had been drinking before the interrogation, but the detective could not conclude he was drunk because he was unaware of the detainee's alcohol tolerance. *Id.* at 184. The detainee was placed in a room at the police station with a comfortable chair from 5:50pm to 9:15pm, during which time he was questioned intermittently and offered food and coffee. *Id.* While the detainee initially stated he did not want to give a statement, he ultimately made several statements which were not rendered involuntary by his initial refusal to speak. *Id.* The detectives exposed inconsistencies in the detainee's statements which the detainee perceived to be "increasingly hostile," but the court found the "routine" confrontation of the suspect "with incriminating evidence" was not coercive. *Id.* In light of the totality of the circumstances, the Court found no evidence that the detainee's statements were involuntary. *Id.* at 185.

Likewise, the Second Circuit found statements voluntary when made over the course of a two-day interrogation where the detainee was advised of his *Miranda* rights at the beginning of each day of interrogation, was not handcuffed during the interrogation, and was offered food and drinks. *United States v. Awan*, 384 Fed. App'x 9, 15 (2d Cir. 2010). The detainee had some legal training, spoke English well, and was previously involved with the criminal justice system. *Id.* In

the middle of the second day of interrogation, law enforcement officials advised the detainee that he "faced potential charges ranging from jail time all the way possibly to the death penalty," but the Court found that statement was "only made in response to concerns that the defendant did not understand the seriousness of the charges." *Id*. at 14. Defendant was not otherwise threatened, and the Court found that the totality of the circumstances supported voluntariness. *Id*.

The Second Circuit also applied the totality of the circumstances to find a statement voluntary in *United States v. Romano*, 630 F. App'x 56 (2d Cir. 2015). In *Romano*, the detainee was not questioned until he was transported from his prison cell to the FBI field office, informed of his *Miranda* rights orally and in writing, appeared calm, and understood what was happening throughout the interrogation. *Id*. at 58. The officers suggested that cooperation would be in the detainee's best interest because "it would be made known to the prosecutors and the judge," but the court found that that "promise[] of leniency, without more, [did] not render [the] confession involuntary." *Id*.

By contrast, in *Lynumn* the Supreme Court found the confession of a mother, made after she was told her two very young children would be taken away from her if she did not confess, was involuntary. 372 U.S. at 531. In that instance, prior to confessing, the detainee stated she would do anything to prevent her children from being taken away from her. *Id*.

## IV. Discussion

### A. The Admissions Were Voluntary

Mr. Boisvert's experience, background and intelligence militate against finding his admissions involuntary or coerced. At the time of his arrest, he was nearly 40 years old. [11-cr-08-VLB-1, Dkt. 98 (PSR) at ¶ 57.] He received a high school diploma from Chicopee Comprehensive High School on September 6, 1987. *Id*. Thereafter, he attended Southeastern Academy in Kissimmee, Florida from which he received a certificate in travel and tourism. *Id.* at ¶ 58. Prior to his arrest, Petitioner maintained employment consistently. *Id*. at ¶ 82. While detained at the Wyatt Detention Facility, he has continued to pursue his education, taking classes in English, chemistry, world history, biology and math. *Id*. He played an active role in the defense of his case and has with some success pursued post-conviction relief representing himself *pro se*. Prior to his arrest on the charges leading to the convictions at issue here, he had experience with the criminal justice system, having been prosecuted as a juvenile for similar offenses. In preparation for sentencing, he was evaluated by a psychologist and his sentencing memorandum did not assert that he suffered from any mental infirmity. [11-cr-8-VLB-1, Dkt. No. 100 (Sentencing Memo).] Petitioner's understanding of the criminal justice system and intelligence are indicative of voluntariness. *See Awan*, 384 Fed. App'x at 15.

The conditions of his confinement also militate against a finding that Petitioner's admissions were involuntary or coerced. Upon his arrest, Petitioner was immediately taken to the offices of the FBI where he was advised of his

14

*Miranda* rights prior to his interrogation. Specifically, he was advised that he had the right to remain silent, that anything he said could be used against him in a court of law, that he had the right to speak with an attorney for advice before being questioned and to have an attorney present during questioning, that if he could not afford an attorney one would be appointed for him prior to any questioning if he so desired, and that if he chose to answer questions at that time without an attorney, he could stop speaking at any time. Hearing Exhibit 1. By his own testimony and the evidence presented in the hearing, Mr. Boisvert was advised of these rights in a clear and concise writing which he had a sufficient opportunity to read and understand. In fact, he initialed each advisement and signed the document denoting his understanding. The fact that the Petitioner was *Mirandized* and understood his rights is indicative of voluntariness. *See Romano*, 630 F. App'x at 58.

In addition, law enforcement agents did not engage in misconduct, or any conduct which overcame Petitioner's will. Law enforcement officers asked about Petitioner's conduct and showed him transcripts of his chats, which he signed. He was detained a total of 3 hours, including the time after the interview ended while he was waiting to be transported to court for arraignment. He was given refreshments and allowed to relieve himself. He does not contend that he was mistreated in any way. He was not restrained, struck, or threatened; nor was he promised anything in return for his initials and signature on the documents presented to him. On the contrary, the agents were civil towards him, did not threaten him, did not promise him anything, and did not mislead him in any way*.*

The length of the interrogation, lack of misleading promises, and offers of food and drink are all indicative of voluntariness. *See Green*, 850 F.2d at 902; *Awan*, 384 Fed. App'x at 15; *Lynch*, 92 F.3d at 62.

Nor does the evidence here indicate that Petitioner was coerced by the police. Petitioner only asserts that law enforcement officers coerced him when, while apprehending him in Milford, they surrounded his vehicle to prevent his possible flight and brandished their weapons until they determined he did not pose a safety risk. The time delay between Petitioner's apprehension and his cooperation disproves Petitioner's assertion. Petitioner initialed and signed the chats and *Miranda* advisement in the FBI offices in New Haven long after he was apprehended in Milford, at least a half-hour drive away, and Petitioner does not claim law enforcement engaged in any inappropriate conduct after his initial detainer. Moreover, we know why Petitioner initialed and signed the documents because he has stated his reason: he decided to cooperate in hopes of earning a favorable outcome. Petitioner's own statement makes clear that he was not coerced into signing the chats, nor did law enforcement officers use improper coercion tactics when detaining Petitioner in Milford. *United States v. Campo Flores*, No. S5 15 CR. 765 (PAC), 2016 WL 5946472, at *8 (S.D.N.Y. Oct. 12, 2016) (finding that "[e]nsuring security would be a priority does not suggest, in light of all other circumstances, physical coercion").

Mr. Boisvert has failed to identify any facts relating to his background, the conditions of detention, or the conduct of the law enforcement officials which suggest that his waiver of his right to remain silent by signing the Miranda

advisement and the chats was the product of threats, promises, trickery or coercion of any kind. The Court therefore finds that Mr. Boisvert's admissions were knowingly, intelligently and voluntarily made of his own free will with a full and complete understanding of his Fifth Amendment right to remain silent. Accordingly, the Court finds his counsel was not ineffective in failing to move to suppress his admissions.

    B. <u>Sufficiency of the Evidence</u>

Even if his counsel had filed a motion to suppress which was granted, Mr. Boisvert would have been convicted. First, he was represented by three attorneys and he testified that he rejected the advice of all three to accept a plea offer because the government's evidence was highly incriminating. He testified that he rejected their advice because he wanted to tell his story and explain that he was chatting with what he believed to be a child in order to dissuade her from frequenting chat rooms. He also wanted to explain that he arranged to meet with the child so that he could tell her family about her risky behavior. This is what he did, incredulously, at trial. He did not testify as a result of his counsel's failure to suppress his admissions.

Second, there was an abundance of independent evidence from which the jury could have convicted him even if the admissions had been suppressed. Most notably, evidence at trial established that law enforcement agents observed Petitioner leaving his home in Massachusetts and followed him to the vicinity of the location in Milford, Connecticut where the adult male participant in the online chats arranged to meet the intended victim. Petitioner arrived in the vicinity of

17

the agreed meeting location, on the agreed date, shortly before the agreed time, in the possession of the identifying clothing. On those facts alone, a reasonable jury could have concluded that he was the person who engaged in the chats, and could have found him guilty. Even if the jury did not have the signed chats, they had ample evidence from which to convict the Petitioner of the charged offenses.

V.	Conclusion

The Court having found that the admissions were not subject to suppression and that if they were, there was still ample evidence from which a jury could have convicted the Petitioner, it is hereby ordered adjudged and decreed that the Petitioner's petition to set aside and vacate his judgment of conviction is DENIED.

_____/s/_____<br>
VANESSA L. BRYANT<br>
UNITED STATES DISTRICT JUDGE